**No. 11-2030**

————————————

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

————————————

Stanley KOLBE, individually and on behalf of all other persons similarly situated,

Plaintiff–Appellant,

v.

BAC HOME LOANS SERVICING, L.P., and
BALBOA INSURANCE COMPANY,

Defendants–Appellees.

————————————

On Appeal from a Judgment of the United States District Court
for the District of Massachusetts, Boston (Civ. Action No. 11-10312)

————————————

**PETITION FOR REHEARING EN BANC
OF BAC HOME LOANS SERVICING, L.P.,
n/k/a BANK OF AMERICA, N.A.**

————————————

John C. Englander (1st Cir. # 45653)
William M. Jay (1st Cir. # 111872)
Matthew G. Lindenbaum (1st Cir. # 124920)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel.:  (617) 570-1000
Fax.:  (617) 523-1231
jenglander@goodwinprocter.com
wjay@goodwinprocter.com
mlindenbaum@goodwinprocter.com

Dated: October 12, 2012                    *Counsel for Defendants-Appellees*

# **TABLE OF CONTENTS**

RULE 35(a)(1) STATEMENT REGARDING REHEARING EN BANC...............1

BACKGROUND ...................................................................................1

    A.    Federal Flood Insurance Requirements..................................1

    B.    Procedural History.................................................................4

    C.    The Panel Opinion and Dissent..............................................4

REASONS FOR GRANTING REHEARING EN BANC ......................7

    I.    THIS IS AN EXCEPTIONALLY IMPORTANT CASE...................7

    II.    THE PANEL MAJORITY MISINTERPRETED
        THE FHA FORM.................................................................11

CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Gibson v. Chase Home Fin., LLC*,
  No. 8:11-cv-1302, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011).............9

*LaCroix v. U.S. Bank, N.A.*,
  No. 11-cv-3236 (DSD/JJK), 2012 WL 2357602 (D. Minn. June 20, 2012) ........9

*In re Mortgage Lender Force-Placed Ins. Litig.*,
  MDL No. 2388 (J.P.M.L. Sept. 28, 2012)...........................................................8

**STATUTES, REGULATIONS AND RULES**

42 U.S.C. § 4001(a) ...........................................................................................8

42 U.S.C. § 4012a ..........................................................................................3, 9

42 U.S.C. § 4012a(a) ....................................................................................2, 12

42 U.S.C. § 4012a(b)(1) ...............................................................................2, 12

42 U.S.C. § 4012a(e) .........................................................................................12

42 U.S.C. § 4012a(f) ............................................................................................2

42 U.S.C. § 4024 ............................................................................................4, 9

42 U.S.C. § 4128 ............................................................................................4, 9

24 C.F.R. § 200.80(a).........................................................................................3

24 C.F.R. § 203.16a(a) ......................................................................................12

24 C.F.R. § 203.16a(c) ..................................................................................3, 12

44 C.F.R. § 61.6(a)..............................................................................................2

Fed. R. App. P. 35 ..............................................................................................1

## OTHER MATERIALS

Federal Emergency Management Agency, *National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines* (2007), *available at* http://www.fema.gov/library/viewRecord.do?id=2954 .......4, 11, 14

HUD, *Monthly Report to the FHA Commissioner on FHA Business Activity* 6 (Aug. 2012), http://portal.hud.gov/hudportal/documents/ huddoc?id=12aug.pdf .........................................................................8

HUD, *FHA Share of Home Purchase Activity* tbl.1 (Sept. 10, 2012), http://portal.hud.gov/hudportal/documents/huddoc?id=fhamkt0612.pdf.............8

Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance, 74 Fed. Reg. 35,914, 35,936 (July 21, 2009) ...........................................4, 9, 10

## RULE 35(a)(1) STATEMENT REGARDING REHEARING EN BANC

This case presents a question of exceptional and, indeed, nationwide importance:  whether a provision that was written and promulgated by the Federal Housing Administration (FHA)—and that appears verbatim in approximately 8 million mortgages nationwide—may be read to prohibit mortgage lenders from requiring borrowers to purchase flood insurance greater than the minimum required by federal statute (the outstanding loan balance).  A divided panel of this Court has held that it may.  But the federal agencies with primary responsibility for interpreting the federal flood-insurance law and regulations have clearly stated that lenders may (indeed, should) require greater flood-insurance coverage, *e.g.*, covering the replacement cost of the property.  The panel opinion thus has read the federal policy in this area to be in essence incoherent, with the FHA's own form undermining the policy of other agencies and regulators.  Numerous pending, putative class action cases around the country turn on the identical HUD form at issue here.  Unless the panel decision is reviewed en banc, as Judge Boudin presciently warns in dissent, it "will be the source of great mischief," nationwide.  Addendum ("Add.") 38. This case therefore meets the standard for rehearing en banc.  Fed. R. App. P. 35.

### BACKGROUND

**A.  Federal Flood Insurance Requirements.**—Under federal law, single-family homes in a flood zone that are subject to a mortgage must be covered by

flood insurance, and if the homeowner fails to obtain the required insurance, the mortgage lender must obtain it on his behalf.  42 U.S.C. § 4012a(b)(1).  Those federal requirements are implemented in a number of ways, including direct regulation of mortgage lenders and restrictions on what mortgages the FHA may insure.

**1.**  Under the National Flood Insurance Act (NFIA), lenders may not place a mortgage on a single-family home in a "special flood hazard" area unless they ensure that it has flood insurance coverage "in an amount ***at least*** equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the [NFIA] with respect to the particular type of property, whichever is less."  42 U.S.C. § 4012a(b)(1) (emphasis added).  If the homeowner does not obtain coverage, the lender must, or suffer civil penalties.  *Id.* § 4012a(f).  Coverage for a single-family home cannot exceed $250,000.   44 C.F.R. § 61.6(a).

**2.**  The same provision of the NFIA also prohibits any federal agency from providing financial assistance to uninsured homes in flood zones.  Thus, the FHA may not insure a mortgage on a home in a special flood hazard area unless the home is covered by flood insurance, although "the amount of flood insurance required need not exceed the outstanding principal balance of the loan."  42 U.S.C. § 4012a(a).  The FHA has implemented that requirement with a regulation that echoes Section 4012a(b)(1):  the amount of insurance shall be "in an amount ***at least*** equal to either the outstanding balance of the mortgage . . . or the maximum

2

amount of the NFIP insurance available."  24 C.F.R. § 203.16a(c) (emphasis added).

Every FHA-insured mortgage must be on a form promulgated by the FHA— the form at issue in this case.  *Id.* § 200.80(a).  Paragraph 4 of that form addresses property insurance, as follows:

> **Fire, Flood and Other Hazard Insurance.**  [1] Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  [2] This insurance shall be maintained in the amounts and for the periods that Lender requires.  [3] Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary [of Housing and Urban Development (HUD)].

This case turns on the interaction between Sentences 1-2 and Sentence 3.

**3.**  Congress has given principal authority to interpret and implement the NFIA to the Federal Emergency Management Agency (FEMA).  Other agencies— including bank regulatory agencies—have rulemaking authority "in cooperation with" FEMA.  42 U.S.C. § 4128.  In particular, FEMA must "assure" that other federal agencies' programs are consistent with the NFIA.  *Id.* § 4024.

Using that authority in consultation with FEMA, the bank regulatory agencies have answered the question presented in this case, in the context of the lender requirements.  In guidance interpreting Section 4012a and its implementing regulations, the bank regulatory agencies have stated:  "*Can a lender require more flood*

3

*insurance than the minimum required by the Regulation?  Answer:* **Yes**." 74 Fed.

Reg. 35,914, 35,936 (July 21, 2009) (boldface added).  FEMA has agreed with that

position in its own guidelines, which confirm that "[b]y insuring buildings to the

full [replacement cost value], the lender and borrower are both better protected."

FEMA, *National Flood Insurance Program: Mandatory Purchase of Flood Insur-*

*ance Guidelines* 28 (Sept. 2007) (FEMA Guidelines).

    **B.  Procedural History.**—Plaintiff Kolbe bought a single-family house in a

special flood hazard area in New Jersey.  His mortgage agreement included HUD's

standard paragraph quoted above.  He bought flood insurance in excess of the min-

imum.  His lender later went bankrupt and Defendant BAC Home Loans Servicing,

LP ("Bank of America") took over his loan.  It informed Kolbe that it would re-

quire (and if necessary, would purchase) additional flood insurance, to cover the

property's replacement cost.  Kolbe bought the additional insurance.  Add. 3-5.

    Kolbe brought this action as a putative nationwide class action, contending

that Bank of America's insistence on increased flood insurance coverage was a

breach of contract and a breach of the implied covenant of good faith and fair deal-

ing.  The district court (Gorton, J.) dismissed the action for failure to state a claim.

    **C.  The Panel Opinion and Dissent.**—A divided panel of this Court rein-

stated the claims against Bank of America (but not its co-defendant, *see* Add. 29).

**1.** The operative paragraph of the HUD form is entitled "**Fire, Flood and Other Hazard Insurance**." The first sentence requires homeowners to insure "against any hazards, casualties, and contingencies, including fire, for which [the] Lender requires insurance." The second sentence specifies that the lender may "require[]" the "amounts" of the insurance. Bank of America contended that those provisions authorized it to require Kolbe to obtain additional flood insurance.

The panel majority rejected that contention, although it acknowledged that Bank of America's construction was "reasonable." Add. 11, 21. In the majority's view, the better reading is that flood insurance is regulated only by the third sentence—requiring Kolbe to "also insure . . . against loss by floods to the extent required by the Secretary." The majority thought that sentence could be read to **preclude** lenders from requiring homeowners to obtain any amount of flood insurance in excess of the federally-prescribed minimum, *i.e.*, the remaining balance of the loan. The majority concluded that "the form's language [wa]s not decisive," so it turned to extrinsic evidence. Add. 12.

The majority acknowledged that both FEMA and the bank regulatory agencies have opined that lenders may—and indeed should—require more flood insurance than the minimum required amount. Add. 17, 21. But the majority discerned some contrary indication in general HUD practice, which it perceived as "treating flood insurance independently," Add. 15-16, and reflecting a general desire not to

require too much insurance, Add. 18-19.  The majority thus surmised that, despite clear guidance from sister agencies, HUD might have written a form that prohibited banks from requiring any flood insurance greater than the federal minimum.

The majority concluded that the HUD form was ambiguous and vacated the dismissal of Kolbe's claims against Bank of America.  Add. 20-21, 29.  Reinstating the contract claims also reinstated the bad-faith claims.  Add. 22-28.

**2.**  Judge Boudin dissented.  He explained that flooding is a "hazard" and that Bank of America's actions therefore were authorized under the first sentence of the form provision.  Add. 34.  Standard hazard insurance policies exclude flood coverage, but only by a separate exclusion; absent such an exclusion, Judge Boudin stated, flooding is a "hazard."  Add. 36.

As for the third sentence, Judge Boudin explained, it "is directed to what the *government* sets as a minimum amount of flood insurance for its own reasons and neither qualifies nor contradicts the right of the *bank*—explicitly reserved—to set a different amount that is higher than the government minimum."  Add. 34.  Judge Boudin offered several valid reasons why a bank might require insurance in excess of the federal minimum, including ensuring that the house will be replaced and the loan will continue.  Add. 33-34.  Judge Boudin also disagreed with the majority's reading of HUD documents, which list flood insurance separately merely because flood insurance is sold separately from other hazard insurance.  Add. 37.

Judge Boudin concluded that the district court's disposition had been "plainly correct":  Bank of America's reading was the only "sensible" one and was supported by "salient practical reasons."  Add. 38.  "To let this case proceed," he warned, "will be the source of great mischief."  *Id.*

## REASONS FOR GRANTING REHEARING EN BANC

A divided panel of this Court has seriously misconstrued a provision that appears in every FHA-insured mortgage in this country.  Its misinterpretation allows Kolbe to pursue liability against Bank of America for following a practice—insuring homes at replacement cost value—that is not just permitted but *encouraged* by the responsible federal agencies and supported by sound policy, as Judge Boudin explained.  The impact of the panel majority's erroneous decision will be felt not just in this Circuit, but nationwide, and the decision has the potential to materially impede clear federal policy in the area of flood risk management, including by adversely affecting the federal treasury.  The case should be reheard en banc.

## I.    THIS IS AN EXCEPTIONALLY IMPORTANT CASE

**A.** The panel's misinterpretation of the National Flood Insurance Program disregards the controlling views of multiple federal agencies in a way that will affect millions of federally insured mortgages nationwide.  The document that the court interpreted in this case is not a contract written by private parties after mutual negotiation.  Rather, it is a form prescribed by the FHA pursuant to federal regula-

tions and used in every single FHA-insured mortgage. There are approximately 8 million such mortgages in force, and in recent years the number has grown dramatically:  in fiscal year 2010, FHA insured more than a million home purchases, nearly 20% of *all* home purchases nationwide.[1]  Every one of them includes the same language at issue here.  Indeed, Kolbe seeks to represent a class that is not limited to people with a current mortgage, but includes everyone who has *ever* been asked by Bank of America to maintain more flood insurance than the minimum.  *See* Record Appendix ("R.A.") 20-22.  In its breadth of potential impact alone, this case plainly meets the standard for rehearing en banc.

Because it involves the interpretation of an FHA form in widespread use, this case will cast a nationwide shadow even if it does not result in a nationwide class-action judgment.  Bank of America and other mortgage lenders are currently defending numerous cases involving allegations that they breached contracts by purchasing lender-placed insurance.  *See, e.g.*, *In re Mortgage Lender Force-Placed Ins. Litig.*, MDL No. 2388 (J.P.M.L. Sept. 28, 2012) (identifying 31 such actions).  Several of those cases, being litigated around the country, involve precisely the same issue as this case:  the interpretation of the same language from the

---

[1] HUD, *Monthly Report to the FHA Commissioner on FHA Business Activity* 6 (Aug. 2012), http://portal.hud.gov/hudportal/documents/huddoc?id=12aug.pdf ; HUD, *FHA Share of Home Purchase Activity* tbl.1 (Sept. 10, 2012), http://portal.hud.gov/hudportal/documents/huddoc?id=fhamkt0612.pdf.

same FHA form.  The issue is currently pending in the Eighth Circuit,[2] and the decision below has already featured prominently in the briefing in that case.  Such cases are pending in numerous other courts as well.  *See, e.g.*, Appellant's Br. 12 (citing two such cases).  Undersigned counsel are aware of at least 9 such cases.  And even in cases that do not involve the FHA form, courts have found the district court's decision in this case instructive.  *See, e.g.*, *Gibson v. Chase Home Fin., LLC*, No. 8:11-cv-1302, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011).

**B.**  The decision below is also exceptionally important because it mistakenly treats the federal government as speaking incoherently, in a way that is directly at odds with congressional direction.  Congress has specifically charged FEMA with ensuring that all agencies that implement the NFIA act in a consistent way.  42 U.S.C. §§ 4024, 4128.  The NFIA, in Section 4012a, both precludes FHA from insuring mortgages on homes without minimum flood coverage *and*, in nearly identical language, precludes lenders from lending money to buy homes without minimum flood coverage.  With extensive involvement by FEMA, the bank regulatory agencies have adopted regulatory guidance making crystal clear that the requirement to obtain *minimum* flood coverage is a floor, not a ceiling:  lenders may require more than the minimum flood coverage.  74 Fed. Reg. at 35,936.

---

[2] *See LaCroix v. U.S. Bank, N.A.*, No. 11-cv-3236 (DSD/JJK), 2012 WL 2357602, at *3-7 (D. Minn. June 20, 2012) (agreeing with the district court in this case), *appeal docketed*, No. 12-2701 (8th Cir. July 19, 2012).

Despite this clear and consistent guidance from statutorily established federal regulators, the panel majority mistakenly interpreted various HUD documents—none of them on point, and none with the same formal status as the guidance cited above—as taking the diametrically opposed view that a lender may ***never*** require greater flood insurance than the statutory minimum. The majority then found ambiguity based on the notion that some parts of the government were on one side, and some parts on the other. But the National Flood Insurance Program requires numerous agencies to work together without producing Babel-like confusion—just the result that the panel majority's misinterpretation of various HUD publications has sown. Had the panel correctly perceived how the responsible agencies interpret the statutory and regulatory backdrop here, it would not have placed the government's views on both sides of the scale. The government has but one view— "*Can a lender require more flood insurance than the minimum required by the Regulation? Answer:* Yes," 74 Fed. Reg. at 35,936—and that view eliminates any possibility of ambiguity in this government-written form.

Indeed, the majority's decision threatens national flood-insurance policy in a further respect. If Kolbe is correct, then lenders may ***never*** require flood insurance—not a penny of coverage—outside a special flood hazard area, because the NFIA does not *require* FHA or lenders to insist on such coverage. But as discussed below, not all flooding occurs in special flood hazard areas. Insurers know

10

that, and so does FEMA, which offers and encourages flood insurance in other areas. FEMA Guidelines 5. The panel's decision places that sound practice at risk.

**C.** For the foregoing reasons, the effect of the panel majority's erroneous construction will be felt nationwide. This Court should reconsider this important issue en banc and, as explained below, affirm the district court's decision. Rehearing may also allow this Court to obtain the benefit of the government's views.

## II. THE PANEL MAJORITY MISINTERPRETED THE FHA FORM

The FHA mortgage form is not ambiguous: the borrower shall insure the property "against any hazards, casualties, and contingencies, including fire, for which [the l]ender requires insurance," and shall do so "in the amounts . . . that [the l]ender requires." Add. 3, 9. Because flooding is within the scope of "hazards, casualties, and contingencies," those two sentences dispose of Kolbe's claim.

As Judge Boudin explained, the ordinary meaning of "hazard" encompasses flooding. Add. 34. And so does the meaning of "hazard" in insurance contracts. Indeed, if flooding were not a "hazard," there would be no need for hazard insurers to do what they have widely done: expressly *exclude* flooding from coverage. Add. 35-36. And in the context of the HUD form, any possible doubt is eliminated by the title of the relevant provision: "**Fire, Flood and Other Hazard Insurance**." Under the HUD form as in any other insurance context, flood insurance is hazard insurance, just as fire, wind, or earthquake insurance is.

Unlike with other hazard insurance, there is a statutory obligation for certain mortgagors to purchase at least a specified minimum amount of flood insurance, and for their mortgage lenders to see that they do. Indeed, the lenders are subject to civil penalties if they do not carry out their obligation. To that end, a HUD regulation specifically requires that there must be "a special condition . . . in the mortgage commitment," obligating "the mortgagor and mortgagee" to maintain flood insurance coverage, and that the flood insurance be "in an amount at least equal to" the government-specified minimum. 24 C.F.R. § 203.16a(a), (c). The HUD form does treat flood insurance "separately," as the panel noted (Add. 14), but that is because the federally required minimum applies only to flood insurance.

Under both the regulation and the statute it implements, the minimum is just that—a minimum, which the borrower or lender is free to exceed, within the limits set by the NFIA. Thus, there is no conceivable argument that the borrower *violates* the Secretary's requirements by obtaining more than the minimum coverage. *See* 42 U.S.C. § 4012a(a) ("need not exceed"); *id.* § 4012a(b)(1) ("at least equal to"); *id.* § 4012a(e) ("not less than"); 24 C.F.R. 203.16a(c) ("at least equal to").

Read against that statutory and regulatory backdrop, the HUD form's reference to flood insurance coverage cannot be interpreted as the panel majority proposed—as not just a minimum, but an absolute ceiling on the amount of flood insurance that the borrower shall maintain. The correct reading is the one Judge

Boudin explained:  The borrower shall obtain the coverage directed by the lender, and "shall also insure . . . against loss by floods to the extent required by the Secretary."  If the lender does not require flood insurance but the Secretary does, *or* if the Secretary does not require flood insurance (for example, because the home is not in a special flood hazard area) but the lender does, the borrower must obtain the coverage.  Those sentences complement each other; they do not conflict, and they certainly do not remove flooding from the scope of the operative phrase "hazards, casualties, and contingencies."  *See* Add. 34-35.

Put another way, there is no requirement that the borrower obtain flood insurance "only" to the extent required by the Secretary; rather, the plain language requires that the borrower comply with the lender's requirements and "also" with the Secretary's.  Nothing in the word "also" suggests that the borrower obtain *exactly* what the Secretary requires, as the panel majority suggested (Add. 10-11). Obtaining an amount greater than the Secretary requires does not violate the Secretary's requirements; it satisfies them.  Kolbe himself alleges that he maintained coverage in excess of the required minimum amount.  R.A. 16.  Thus, because Kolbe complied with Bank of America's requirements and "also" with the Secretary's, Bank of America's reading of the HUD form gives full effect to the word "also."  Moreover, and equally important, the panel majority's proposed reading of the third sentence has it **conflicting** with the first two sentences.  Such a reading

violates basic rules of contract construction where there is an alternative construction that harmonizes the provisions. Tellingly, the panel majority never even acknowledges this basic flaw in its analysis.

As the government has authoritatively explained in interpreting the complementary requirements that apply to lenders, there are often sound reasons for a lender to require that the homeowner maintain more flood insurance than the required minimum amount. First, there is **no** federally required amount outside special flood hazard areas (SFHAs). But there may well be sound reasons to require flood insurance on homes outside those areas. FEMA has explained that flood risk is not confined to SFHAs and ***recommends*** insurance even outside SFHAs:

> While the mandatory purchase requirement applies only to buildings located in SFHAs of participating communities, NFIP flood insurance coverage is available and ***highly encouraged*** in low-to-moderate flood risk areas of NFIP participating communities. This is especially significant because, **historically, about 25 percent of the NFIP claims paid have actually been outside of SFHAs**.

FEMA Guidelines 5 (emphasis added). Yet the construction of the HUD form apparently favored by the panel majority would bar lenders from requiring such insurance, no matter how significant the flood risk or how modest the premiums, and despite the clear statement of the federal agency charged with coordinating federal policy on flood risk. And in the not-implausible event of a flood outside an SFHA, the government would be faced with after-the-fact calls for disaster assistance—

precisely what the NFIA seeks to replace with insurance bought in advance. The panel opinion does not acknowledge this issue.

Second, even within special flood hazard areas, covering the full replacement value of the home, rather than just the loan balance, will help to ensure that the home is actually rebuilt. That is in the interest of lenders, borrowers, and homeownership generally—and fully consistent with the goals of the NFIA.

Third, as Judge Boudin pointed out, the minimum amount of insurance may not adequately protect the lender if the home is destroyed by flood and there are other creditors with superior claims to the insurance proceeds. Add. 33-34.

The panel did not dispute the validity of these reasons. But it thought HUD was concerned that lenders might *sometimes* require too much insurance, and that some homeowners might not be able to afford the extra insurance. But the panel pointed to no extrinsic evidence that HUD perceived such a problem. The solution the panel majority adopted, however, threatens to fix insurance coverage forever at the statutory minimum—a minimum that the evidence *does* show to be inadequate in a substantial number of cases. Instead of allowing lenders to exercise judgment, Kolbe's view would impose a one-size-fits-all amount, based on a formula that Congress specifically stated was *not* meant to be a maximum.

## CONCLUSION

The panel decision should be vacated and the case reheard en banc.

Dated:  October 12, 2012     Respectfully submitted,

BAC HOME LOANS SERVICING, LP,

By its attorneys,

s/ John C. Englander
John C. Englander (1st Cir. # 45653)
William M. Jay (1st Cir. # 111872)
Matthew G. Lindenbaum (1st Cir. # 124920)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 570-1000
jenglander@goodwinprocter.com
wjay@goodwinprocter.com
mlindenbaum@goodwinprocter.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify pursuant to Fed. R. App. P. 25(d) that on October 12, 2012, I transmitted the foregoing "Petition for Rehearing En Banc" in the above-captioned matter to the Clerk of the United States Court of Appeals for the First Circuit through the Court's CM/ECF filing system.  I further certify that on that date, I served the counsel listed below, who are Filing Users, through the CM/ECF system.

<u>s/ John C. Englander</u>

Edward F. Haber
Shapiro Haber & Urmy LLP
53 State St.
13th Floor
Boston, MA 02109-0000

Adam M. Stewart
Shapiro Haber & Urmy LLP
53 State St.
13th Floor
Boston, MA 02109-0000

Michelle H. Blauner
Shapiro Haber & Urmy LLP
53 State St.
13th Floor
Boston, MA 02109-0000

Robert Eric Ditzion
Shapiro Haber & Urmy LLP
53 State St.
13th Floor
Boston, MA 02109-0000

Todd Sanford Heyman
Shapiro Haber & Urmy LLP
53 State St.
13th Floor
Boston, MA 02109-0000